UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS MICHAEL MINTUN,<br><br>              Plaintiff,<br><br>    v.<br><br>LES PETERSON; RANDY BLADES; S. LONG; PAM SONNEN; R. JORDAN; D. DIETZ; K. YORDY; GREG WREN; K. BASSFORD; ROBERT JORGENSON; TERRY KNAPP; M. JOHNSON; SGT. HOUSE; SGT. BILLIE FINLEY; DARRELL TAYLOR; KATHLEEN McNULTY; SGT. M. WHITE; SGT. D. WILLIAMS; C/O BERTWELL; and C/O D. JOHNSON;<br><br>              Defendants. | Case No. 1:06-CV-447-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On March 30, 2010, the Court granted Defendants' Motion for Summary Judgment on some of Plaintiff's claims under 42 U.S.C. § 1983. The Court denied the Motion with prejudice as to certain claims, but allowed Defendants Petersen, Taylor, and Blades to renew their Motion with respect to Plaintiff's claims under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act

("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq*.[1]  Defendants have done so.  (Renewed Motion for Summary Judgment, Dkt. 62.)  Defendants' Motion for an Extension of Time to File a Reply (Dkt. 71) will be granted, and their Reply (Dkt. 72) is considered timely filed.

The Court has determined that oral argument would not significantly aid the decisional process and shall decide this matter on the written motions, briefs, and record. D. Idaho L. Civ. R. 7.1(d).  For the reasons that follow, the Court concludes that Plaintiff has failed to allege sufficient facts to overcome Defendants' evidence that they did not substantially burden Plaintiff's exercise of religion, and the Renewed Motion will be granted.

## FACTUAL BACKGROUND

Most of the material facts are set forth in the Court's March 30, 2010 Memorandum Decision and Order (Dkt. 59), and, other than the new evidence submitted in connection with Defendants' Renewed Motion, will be discussed only briefly here. The Court assumes for purposes of summary judgment that all of Plaintiff's allegations are true and makes all reasonable inferences in Plaintiff's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir.

---

[1] The Court also allowed Defendants to renew their Motion with respect to Plaintiff's claim that Defendants Jordan, House, and Dietz violated his Eighth Amendment right against cruel and unusual punishment by moving him to Unit 15.  Plaintiff, however, has informed the Court that he is dropping the Unit 15 issue as a separate claim. (Plaintiff's Memorandum at 7, Dkt. 69.)

**MEMORANDUM DECISION AND ORDER - 2**

1988).

The Court now has more information on the prison's general policy with respect to religious services. That policy, instituted by the Idaho Department of Correction ("IDOC"), "enumerated a large number of both traditional and non-traditional religious services available to the prison population." (Randy Blades Affidavit ¶4, Dkt. 62-5.) It is undisputed that religious services in the prison are conducted by volunteers from the community or by the inmates themselves -- not by any Defendant. (First Les Petersen Affidavit ¶3, Dkt. 28-6; Blades Aff. ¶4.) In addition to the non-denominational fellowship at the center of Plaintiff's claims, at least eight other Christian worship services are available. Two of these services are Pentecostal, which is how Plaintiff describes himself. (Second Darrell Taylor Affdavit ¶¶5-6, Dkt. 62-3.)

Although Plaintiff states that these other services are even "less accepting of homosexuality than the open fellowship" and showed disapproval of homosexuality "pretty much every time," he acknowledges that he has attended only "a couple of different classes or services." (Second Dennis Mintun Affidavit ¶¶2, 11, Dkt. 69-1.) Plaintiff does not offer any specific allegations about his visits to these other services or their alleged hostile environments, other than to say he felt he was in danger. (*Id.* ¶11.) He does not claim that he complained to Defendants about any worship service other than the non-denominational fellowship.

**MEMORANDUM DECISION AND ORDER - 3**

Plaintiff does state that among the services he attended, "the open fellowship was the only one where inmates could participate. . . . [A]s a Pentecostal, participation was critical for me." (*Id.* ¶3.) Plaintiff clarifies, however, that these other services did not actually prohibit inmate participation; rather, the services simply were not led by the inmates. (*Id.*)

When Plaintiff complained to Defendant Petersen about Inmate Monte Brandt's sermon communicating his belief in the sinfulness of homosexual behavior and about Brandt's alleged "gay-bashing" comments, Petersen and Taylor investigated Plaintiff's concerns. According to Plaintiff, Taylor and Petersen decided to separate the two inmates by keeping Plaintiff out of the fellowship while the investigation was pending.[2] (Second Taylor Aff. ¶8; First Dennis Mintun Affidavit ¶23, Dkt. 50.) Plaintiff does not contest that separating inmates during an investigation is required IDOC policy. However, unlike Plaintiff, Brandt was allowed to attend and to lead the fellowship service. (Second Mintun Aff. ¶4.)

In an effort to avoid the allegedly anti-gay environment in the non-denominational fellowship, Plaintiff sought permission to organize "a new fellowship meetings [sic] for gay Christians, so that we could worship without continually being told that our sexual

---

[2] Defendants claim they kept Plaintiff only from singing in the choir during the investigation, but for purposes of summary judgment the Court will accept Plaintiff's version of the facts and assume that he was not allowed to attend the fellowship at all.

**MEMORANDUM DECISION AND ORDER - 4**

orientation is a sin." (First Mintun Aff. ¶21.) Petersen passed this request up his chain of command. When Plaintiff did not hear back after three weeks, he submitted a concern form to Petersen inquiring about the status of his request. (First Taylor Affdavit, Ex A, Dkt. 29 at 8.) It is not clear from the record exactly when Plaintiff made his request, but on January 13, 2004, Petersen informed Plaintiff that it had been denied. (*Id.*)

The next day Plaintiff filed a grievance regarding his being barred from attending the fellowship during the investigation, his attempt to start a service for gay Christians, and the continued "gay-bashing" by inmates in the non-denominational fellowship. (*Id.*) On February 10, 2004, Taylor informed Plaintiff in writing that the investigation was concluded and that Plaintiff could return to the choir. (First Taylor Aff. ¶¶ 10-11.) Taylor also admonished Brandt about his inappropriate comments. (*Id.*, Ex. A, Dkt. 29 at 7. Deputy Warden Michael Johnson concurred with Taylor's handling of the situation and denied the grievance. (*Id.*, Ex. A, Dkt. 29 at 5.) On March 16, 2004, Defendant Blades affirmed that decision, including the denial of Plaintiff's request for a gay Christian service. (*Id.*) He stated, "To communicate a belief in the ISCI Chapel, the religion must be an IDOC approved religion. I recommend you attend the one that comes closest to your belief." (*Id.*; Blades Aff. ¶5.) This statement was intended "to reiterate the position that [Plaintiff] could attend any chapel service of his choice including the non-denominational open fellowship." (Blades Aff. ¶5.)

**MEMORANDUM DECISION AND ORDER - 5**

Following the investigation, Plaintiff tried to return to the non-denominational fellowship, but Brandt told him he could not sing in the choir. Plaintiff reported the incident to Taylor. (Second Taylor Aff. ¶10.) Taylor responded, "Monte is not in charge. I am." He then reiterated to both Plaintiff and Brandt that Plaintiff "was allowed to fully participate in the open fellowship" and admonished Brandt once again "for his inappropriate actions surrounding his interpretation of the Bible lesson." (*Id.*)

In contrast to Taylor's repeated statements to Plaintiff that he could fully participate in the non-denominational fellowship, Plaintiff claims Petersen privately recommended that he not return. Petersen allegedly told Plaintiff that "there 'had been threats' and that it would be better if [he] did not attend . . . the fellowship meetings." (Second Mintun Aff. ¶5.) Plaintiff believed Petersen was referring to threats to Plaintiff's safety. (*Id.*) Petersen denies making this statement. (Second Les Petersen Affidavit ¶3, Dkt. 62-2.)

## STANDARDS OF LAW

On summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition testimony) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman*

*Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Liberty Lobby*, 477 U.S. at 256-57. The non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1056 (9th Cir. 2002).

As the Court explained in its previous summary judgment ruling, if a prison official's action impinges on a prisoner's rights under the Free Exercise Clause of the First Amendment, such action is valid as long as it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Under RLUIPA, the inmate bears the initial burden of showing that the action of a prison official constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). If the inmate does so, prison officials "shall bear the burden of persuasion to prove that [the] substantial burden on [the inmate's] exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" *Id.* at 995 (quoting 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b)).

## DISCUSSION

**MEMORANDUM DECISION AND ORDER - 7**

Plaintiff's Free Exercise and RLUIPA claims are based on three alleged incidents: (1) he was prohibited from participating in the fellowship during Petersen's and Taylor's investigation into Plaintiff's complaint about gay-bashing; (2) even though Defendant Taylor said Plaintiff could return to the fellowship and choir after the investigation, Defendant Petersen told him that, because of safety concerns, "it would be better" if Plaintiff did not return; and (3) Defendant Blades denied his request for an alternate service specifically for gay Christians.

## A. RLUIPA

Defendants have not argued that any of their actions constituted the least restrictive means of furthering a compelling governmental interest. Therefore, the Court will focus on the "substantial burden" prong of the RLUIPA analysis.

Although RLUIPA does not define "substantial burden," that term has been described as "oppressive to a significantly great extent," *Warsoldier*, 418 F.3d at 995 (internal quotation marks omitted), such that it renders religious exercise "effectively impracticable." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir.2004). The phrase should be defined with reference to the Supreme Court's free exercise jurisprudence. *Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006); *see also* 146 Cong. Rec. S7774-01 (2000) ("[I]t is not the intent of this Act to create a new standard for the definition of "substantial burden" on

religious exercise. Instead, that term as used in the Act should be interpreted by reference to Supreme Court jurisprudence.")

Therefore, a "substantial burden" is an action that either (1) forces individuals to choose between following the tenets of their religion and receiving a governmental benefit, or (2) pressures individuals to act contrary to their religious beliefs. *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981); *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). *See also Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008) (en banc) (adopting this definition of "substantial burden" for purposes of the Religious Freedom Restoration Act, the counterpart of RLUIPA that applies to the federal government).

Because Plaintiff's RLUIPA claims revolve around a specific worship service (the non-denominational fellowship), it is necessary to define the particular religious exercise that is allegedly subject to a state-imposed substantial burden. The experience of a group worship service in general is a "religious exercise" for purposes of RLUIPA. *Greene v. Solano County Jail*, 513 F.3d 982, 987-88 (9th Cir. 2008). However, "[a] special chapel or service need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam). The First Amendment does not impose on prison officials "an affirmative duty to provide each inmate with the spiritual [resource]

**MEMORANDUM DECISION AND ORDER - 9**

of his choice." *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993) (internal quotation marks omitted); *see also Gittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970) ("The requirement that a state interpose no unreasonable barriers to the free exercise of an inmate's religion cannot be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice.").

Therefore, a prohibition on attending one particular worship service, when others are available, does not automatically burden the prisoner's entire religious exercise of group worship. In order to trigger the protections of the statute, Plaintiff must show that prison officials substantially burdened his ability to participate in group worship generally, *not* his ability to participate in the non-denominational fellowship or to create a new service specifically.

When Petersen and Taylor removed Plaintiff from the fellowship during the investigation, when Petersen recommended that Plaintiff worship elsewhere, and when Blades denied Plaintiff's request for an alternate service, there were eight other Christian worship services Plaintiff could have attended, including two that were specifically designed to meet the needs of Pentecostal inmates like himself. (Second Taylor Aff. ¶¶5-6.) Plaintiff's right to group worship could have been satisfied by his attending one of these other services. Defendants have met their initial burden of showing they did not substantially burden Plaintiff's religious rights either by keeping him away from the non-

denominational fellowship or by denying his request for a new service exclusively for gay Christians.

Plaintiff counters that, even with the other available services, his right to group worship was still substantially burdened. He alleges that the other services were not adequate to satisfy this right because they were hostile to homosexuals. However, Plaintiff acknowledges that he attended only "a couple of different classes or services." (Second Mintun Aff. ¶2.) Thus, his testimony that homosexuality was spoken of as a sin "pretty much every time" is not particularly illuminating. He claims he felt "in danger" when he attended but does not provide evidence of any particular threat. (*Id.* ¶11.) Plaintiff offers a cursory conclusion that the "other services . . . were even stricter and less accepting of homosexuality than the open fellowship" (*id.* ¶2), but he does not provide any specific facts that adequately explain why none of the prison's existing religious worship services could meet his spiritual needs.

Notably, Plaintiff complained to Defendants only about an anti-gay environment *in the non-denominational fellowship*. He never raised any concern about any other worship service. As far as Defendants knew, Plaintiff had multiple acceptable options. Additionally, although Plaintiff complains that the other worship services were led by community volunteers, he does not explain how their leadership was so inferior to that of the inmates that it constituted a substantial burden.

**MEMORANDUM DECISION AND ORDER - 11**

Finally, Plaintiff has presented no evidence that other inmates would have attended a service exclusively for gay Christians. The prison had already approved a large number of different religious services in compliance with IDOC policy. (Blades Aff. ¶5.) In the absence of other inmates who also desired a gay Christian worship service, Blades was not required to provide one. *See Cruz*, 405 U.S. at 322 n.2 ("A special chapel or service need not be provided for every faith . . . without regard to the extent of the demand.")

Plaintiff's general allegations, without supporting evidence, are not enough to raise a genuine issue of material fact as to whether Defendants substantially burdened Plaintiff's right to group worship.

**B.     Free Exercise Clause**

Because Plaintiff has failed for purposes of RLUIPA to show that his religious rights were substantially burdened, he has necessarily failed to meet his burden under the Free Exercise Clause. *Greene*, 513 F.3d at 986 (stating that RLUIPA requires the government to meet a "much stricter burden" than the Free Exercise Clause).

**C.     Defendants' Other Arguments**

Because Defendants' Motion will be granted on the basis that their actions did not substantially burden Plaintiff's religious exercise of his right to group worship, the Court need not consider Defendants' qualified immunity or exhaustion arguments.

However, Defendants' unclean hands argument warrants discussion. Defendants

argue that Plaintiff should be completely barred from even asserting his current claims because of Plaintiff's own supposed bad conduct. They state, "It is unfair or inequitable for Mintun to claim that Mr. Petersen violated his religious rights when there were at least two Pentecostal services he could have attended." (Defendant's Memorandum at 16, Dkt. 62-1.) There is no basis in the record for this argument.

Defendants would have this Court conclude that Plaintiff's claims are not only without merit, but that Plaintiff (a prisoner and layperson proceeding pro se for much of this litigation) and Plaintiff's stand-by counsel would both have so obviously known that his claims lacked merit as to have "defrauded [Defendants] in the subject matter of the action," Black's Law Dictionary 1524 (6th ed. 1990), or to have been "'tainted with inequitibleness or bad faith,'" *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). Defendants have never challenged the sincerity of Plaintiff's religious beliefs, and the Court finds nothing in the record to support the idea that Plaintiff's motivation in this litigation has been artificial or malicious.

Defendants also indicate they "detrimental[ly] reli[ed]" on Plaintiff's supposed failure "to take steps to clarify" Petersen's recommendation that he not return to the service, and they assert that Plaintiff should not be allowed "suddenly [to] claim that he was prevented from practicing his religion." (Def. Mem. at 16, 17.)

**MEMORANDUM DECISION AND ORDER - 13**

Defendants do not adequately explain how they relied to their detriment on Plaintiff's actions. The legitimacy of the argument that Plaintiff "suddenly" claimed his religious rights were being violated is questionable, especially given the discussions Plaintiff had with Defendants Petersen and Taylor about his concerns, by Plaintiff's concern forms and grievances on the subject, and by the admitted fact that both Petersen and Taylor acted on Plaintiff's complaint about the non-denominational fellowship by promptly undertaking their own investigation.

Zealous advocacy is expected of all counsel and is to be commended. However, the Court has already warned defense counsel about overzealousness that bordered on frivolity. (*See, e.g.*, Mem. Dec. at 48 (rejecting the argument that Plaintiff's testimony about Defendant Jordan was inadmissible because Plaintiff was not "everywhere in the prison and once" and did not state "exactly" what Jordan said); *id.* at 51-52 (rejecting the argument that Plaintiff's "biases" should "disqualify" his testimony about being kept out of the fellowship during the investigation); *id.* at 53-54 (rejecting the argument that Plaintiff's testimony about what Petersen told him should be stricken because Plaintiff did not reveal exactly when and where Petersen made the statement).) Defense counsel's present arguments warrant a reminder of their ethical obligations.

Although it appears that Defendants' unclean hands argument might be contrary to Rule 11 of the Federal Rules of Civil Procedure, sanctions will not be pursued at this

**MEMORANDUM DECISION AND ORDER - 14**

time.  Counsel should, however, consider this a serious warning for purposes of future litigation practice in this Court.

## CONCLUSION

Defendants have met their burden of showing that, because there were eight other Christian worship services Plaintiff could have attended (including two Pentecostal services), Defendants' decisions to keep Plaintiff from attending the non-denominational fellowship and to refuse to implement a service for gay Christians did not substantially burden his religious exercise.  Plaintiff makes only general allegations about the environments at these other services and offers no evidence that other inmates requested or even desired a gay Christian worship service.

To be clear: The Court does not hold that, when multiple services are available, a prohibition on attending a specific group worship service could never violate an inmate's constitutional or statutory rights.  Nor does the Court hold that a prison is never required to provide a religious service intended to serve those who do not believe their sexual orientation is sinful.  The Court holds only that, on this record and in the absence of specific evidence about the environments of the available services or about other inmates who would have attended a gay Christian worship service, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants violated his rights under RLUIPA or the Free Exercise Clause, and Defendants are entitled to judgment on those claims as a

matter of law.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for an Extension of Time to File a Reply (Dkt. 71) is **GRANTED**.

2. Defendants' Renewed Motion for Summary Judgment (Dkt. 62) is **GRANTED**.

3. This matter shall be referred for a judicially-supervised settlement conference, which shall be conducted by the Honorable Ronald E. Bush, United States District Court for the District of Idaho. Local Rule 16.4. Counsel shall confer to determine available dates and times and shall then contact Lynette Case at (208) 334-9023. The settlement conference shall take place no later than ninety (90) days after the entry of this Order.

DATED: **September 3, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge